IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GINA SMITH, et. al.,<br><br>        Plaintiff(s),<br>v.<br><br>COUNTY OF SANTA CLARA, et. al.,<br><br>        Defendant(s). | CASE NO. 5:11-cv-05643 EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO SEVER**<br><br>[Docket Item No(s). 36] |

Plaintiffs Gina Smith, Aida Oliva, Laurey Shumaker, and Dagmar Chambers (collectively, "Plaintiffs"), filed the instant action against Defendants County of Santa Clara ("the County"), Santa Clara Valley Medical Center, Alfonso Banuelos, M.D., Barbara Traw and Anna Hughes (collectively, "Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983, the California Fair Employment and Housing Act ("FEHA"), as well as other related violations.

Presently before the Court is Defendants' Motion to Sever the claims of Oliva and Shumaker from each other, as well as from those of Smith and Chambers. See Docket Item No. 36. Plaintiffs have filed written opposition to the Motion. See Docket Item No. 39. Having carefully reviewed this matter, the court finds it suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). The hearing scheduled for June 28, 2013, will therefore be vacated. For the reasons explained below, Defendants' Motion will be granted in part and denied in part.

1

CASE NO. 5:11-cv-05643 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO SEVER

## I. RELEVANT BACKGROUND

### A. Smith's Allegations

Smith, who is female and African-American, is employed by the County as a registered nurse at Santa Clara Valley Medical Center. See First Amended Complaint ("FAC"), Docket Item No. 5, at ¶ 26. Smith was assigned to the Mother Infant Care Center ("MICC"). Id. On February 25, 2011, Smith asked a doctor "what his thoughts were regarding male nurses working in the MICC as direct caregivers for mothers and babies." Id. at 28. According to Smith, she had been informed by several female patients that they felt unconformable, embarrassed and unsafe with male nurses performing genital care and breastfeeding techniques. Id. Smith was disciplined as a result of the question by her supervisor, Traw, who stated that her conduct constituted gender discrimination. Id.

On May 17, 2011, Smith spoke with Traw about a patient assignment she considered unsafe, but Traw refused to authorize a change to the assignment. Id. at ¶ 31. Smith alleges that Traw's response constituted "part of a pattern and practice of retaliation against [Smith] and other nurses who voice concerns for patients' safety and care." Id. Smith was also disciplined by Traw "in further retaliation for [Smith] speaking out and complaining about unsafe patient care" and for comparing her assignments with that of her colleagues. Id. at ¶¶ 32-34.

Smith further alleges that Traw took adverse action against her after Smith complained about racial discrimination, in particular that Filipino nurses were receiving preferable assignments, failed to report her discrimination complaints to the appropriate department, created false disciplinary write-ups and accusations concerning violation of HIPAA, and forced her to attend sexual harassment classes without justification. Id. at ¶¶ 36-43.

### B. Oliva's Allegations

Oliva was employed as a per diem nurse at Santa Clara Valley Medical Center. Id. at ¶ 45. On February 25, 2011, Oliva was caring for an HIV-positive patient. Id. While Oliva was holding the patient's infant, she observed the patient exit the in-room shower and drop a towel on the floor near the patient's feet. Id. at ¶ 46. Since Oliva was concerned that the patient could trip over the towel, she asked the patient's sister to pick up the towel. Id. at ¶ 47. Traw allegedly received a complaint about this incident and Oliva was disciplined as a result. Id. at ¶ 48. After Traw was

notified that Oliva retained an attorney, Traw allegedly retaliated against Oliva by filing a complaint with the California Nursing Board. Id. at ¶ 51. Oliva was eventually terminated. Id. at ¶ 54.

### C. Shumaker's Allegations

Shumaker is employed as a registered nurse assigned to the MICC at Santa Clara Valley Medical Center. Id. at ¶ 57. She was the nurses' union representative from 2005 through 2011. Id. In that position, Shumaker voiced concerns about layoffs as well as female patients' requests for female nurses in the MICC. Id. at ¶ 59. Shumaker alleges that Traw and the County took adverse action in response to her union activities by reassigning her to the graveyard shift. Id. After Shumaker informed the County that her medical condition prevented her from working the graveyard shift, she was told that there not a reasonable accommodation available to her. Id. at ¶ 60.

### D. Chambers' Allegations

Chambers, a European-American female, is employed as a registered nurse assigned to the MICC and Santa Clara Valley Medical Center. Id. at ¶ 63. In or about March, 2011, Chambers voiced concerns about a male nurse from an unaccredited nursing school working as a registered nurse. Id. at ¶¶ 65, 66. Like Smith and Shumaker, she also expressed female patients' preferences for female nurses in the MICC. Id. at ¶¶ 67, 68. Chambers was disciplined by Traw as a result of speaking out on these issues. Id. at ¶¶ 66, 68. She was later accused of disclosing confidential information to the newspaper in violation of HIPAA and experienced retaliation in response. Id. at ¶¶ 71-77. Chambers also claims racial and national origin discrimination because nursing assignments were made with preference for Filipino-American. Id. at ¶ 69.

### E. Plaintiffs' Causes of Action

The First Amended Complaint contains 22 causes of action, each of which are listed below:

(1) Discrimination based on disparate treatment in violation of Title VII and FEHA against the County by Smith because she is an African-American female over 40 years old;

(2) Discrimination based on disparate treatment in violation of Title VII and FEHA against the County by Oliva because she is a Filipino female and is 58 years old;

(3) Discrimination based on disparate treatment in violation of Title VII and FEHA against the County by Shumaker because she is a Caucasian female over 40 years old;

(4) Discrimination based on disparate treatment in violation of Title VII and FEHA against the County by Chambers because she is a European-American female over 40 years old;

(5) Discrimination based on disparate treatment in violation of Title VII and FEHA against the County by Smith due to the County's policy against gender discrimination against male nurses;

(6) Discrimination based on disparate treatment in violation of Title VII and FEHA against the County by Oliva due to the County's strict enforcement of a policy against HIPAA violations;

(7) Discrimination based on disparate treatment in violation of Title VII and FEHA against the County by Shumaker due to the County's policy regarding the hiring, promotion and scheduling of nurses, which has a disproportionate effect on those who are over 40 years old and have a medical condition;

(8) Discrimination based on disparate treatment in violation of Title VII and FEHA against the County by Chambers due to the County's policy regarding the hiring, promotion and scheduling of nurses, which has a disproportionate effect on those who voice concerns about patient safety and preference;

(9) Retaliation in violation of FEHA by all Plaintiffs against the County;

(10) Negligent hiring, training, supervision and retention in violation of 42 U.S.C. § 1983 by all Plaintiffs against all Defendants;

(11) Retaliation in violation of 42 U.S.C. § 1983 by all Plaintiffs against all Defendants;

(12) Retaliation in violation of California Labor Code § 1102.5 by Smith against the County;

(13) Retaliation in violation of California Labor Code § 1102.5 by Oliva against the County;

(14) Retaliation in violation of California Labor Code § 1102.5 by Shumaker against the County;

(15) Retaliation in violation of California Labor Code § 1102.5 by Chambers against the County;

(16) Retaliation in violation of California Health and Safety Code § 1278.5 by Smith against the County;

(17) Retaliation in violation of California Health and Safety Code § 1278.5 by Oliva against the County;

(18) Retaliation in violation of California Health and Safety Code § 1278.5 by Shumaker against the County;

(19) Retaliation in violation of California Health and Safety Code § 1278.5 by Chambers against the County;

(20) Invasion of Privacy by Smith and Chambers against Traw;

(21) Intentional Infliction of Emotional Distress by all Plaintiffs against all Defendants;

(22) Retaliation in violation of 42 U.S.C. § 1983 by all Plaintiffs against all Defendants (Monell).

## II. LEGAL STANDARD

There are two rules relevant to this motion. The first is Federal Rule of Civil Procedure 20, which allows multiple plaintiffs to join into one action so long as "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). This type of grouping is known as "permissive joinder." See id. The rule "regarding permissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 917 (9th Cir. 1977).

Sometimes, however, parties align themselves into a single case without satisfying the requirements of Rule 20(a). When that occurs, the court applies the second rule relevant to this motion, Federal Rule of Civil Procedure 21. "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997). "In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs 'against some or all of the present defendants based on the claim or claims attempted to be set forth in the present complaint.'" Id. (quoting Aaberg v. ACandS Inc., 152 F.R.D. 498, 501 (D. Md. 1994)).

Moreover, the court may sever parties even if the Rule 20(a) requirements are satisfied. "[A]

district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting Desert Empire Bank v. Insurance Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980)). "Under Rule 20(b), the district court may sever the trial in order to avoid prejudice." Id.

### III. DISCUSSION

Defendants argue that Oliva and Shumaker must be severed from this action because their claims arise out of distinct circumstances and raise different questions of fact and law. Specifically, Defendants contend that Oliva's claims are separable from those asserted by Smith, Chambers and Shumaker because they arise from a particular incident involving a patient complaint. As to Shumaker, Defendants argue for severance of her claims from those asserted by the other plaintiffs because they stem from union activities, the failure to accommodate her medical condition, and an administrative reassignment following a layoff at the County.

#### A. Transactional Relatedness

Under Rule 20(a), the court must first determine whether Plaintiffs' claims are transactionally related such that they can be maintained in the same case. Doing so requires as assessment of "the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive party joinder." Walker v. Bryson, No. 1:11-cv-01195-AWI-SKO, 2012 U.S. Dist. LEXIS 150309, at *12, 2012 WL 5186658 (E.D. Cal. Oct. 16, 2012). "[S]imilarity in the factual background of a claim" is the key factor. Coughlin, 130 F.3d at 1350. The court is mindful, however, that the term "transaction" in this context takes on a flexible meaning; "[a]bsolute identity of all events is unnecessary." Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).

In employment discrimination cases such as this one, courts looks to several factors when examining the relatedness of claims, including "whether the discrimination took place at roughly the same time, if it involved the same people, whether there is a relationship between the discriminatory action, whether the discriminatory action involved the same supervisor or occurred within the same department, and whether there is a geographic proximity between the discriminatory actions."

Wynn v. Nat'l Broad. Co., 234 F. Supp. 2d 1067, 1087 (C.D. Cal. 2002) (quoting Byers v. Illinois State Police, No. 99-C8105, 2000 U.S. Dist. LEXIS 17929, at *12, 2000 WL 1808558 (N.D. Ill. Dec. 6, 2000)). Furthermore, "allegations of a common discriminatory policy or practice, or a company-wide policy of discrimination, could tilt the balance in favor of joinder despite those other factors which might favor severance." Id.

Looking at this case, there are certain thematic similarities between all of Plaintiffs' claims which favor joinder. Each Plaintiffs' claims occurred during roughly the same time period. They each had the same job title, performed substantially the same duties and worked in the same unit of the same hospital. They also each assert claims of discrimination and retaliation against the same employer, the County, and the same supervisor, Traw. In addition, three of the four plaintiffs - Smith, Shumaker and Chambers - allegedly experienced adverse action after voicing concerns addressing patient safety and patient preferences for female nurses.[1]

But Oliva's claims are different even when viewed with the general similarities in mind. Unlike Smith, Shumaker and Chambers, the crux of Oliva's allegations is not discipline for speaking out about patient safety and preference. In contrast, Oliva focuses her case on a termination of employment following a specific incident of allegedly substandard job performance, which apparently forced the County to disclose information protected by HIPAA. Indeed, the distinct nature of Oliva's case is highlighted by the language used to describe for claim of disparate treatment: the County "did not report to the license board that another similarly situated nurse, of different racial classification, posted a sign, stating in bold print 'HIV Positive,' on the hospital crib of an HIV positive infant, for all to see and read, including visitors, vendors, strangers and others." See FAC, at ¶ 56. None of the other plaintiffs were disciplined for similar conduct. Although Oliva attempts to tie her claims in with the others by also asserting causes of action based on racial discrimination and unwarranted discipline for a HIPAA violation, those causes of action and the allegations which support them appear on the periphery. The fact that Oliva's allegations arise from

---

[1] As noted, Defendants attempt to distinguish Shumaker's allegations by citing only union activity and a failure to accommodate as a basis for her claims. But union activity and her medical condition aside, Shumaker was allegedly subjected to retaliation for speaking out in the workplace. In that way, her claims are related to those of Smith and Chambers.

a discrete event unique to her is inescapable, no matter the causes of action she chooses to assert.

Under these circumstances, the court finds that the claims of Smith, Shumaker and Chambers are transactionally related. Oliva's claims are not.

### B. Commonality and Other Factors

Under Rule 20(a)'s second requirement, the court must determine whether Plaintiffs' claims present a common issue of law or fact. This is not a particularly stringent test. See Walker, 2012 U.S. Dist. LEXIS 150309, at *13. However, invocation of the same body of general law, without more, will not satisfy this requirement. Wynn, 234 F. Supp. 2d at 1081.

Here, the question of commonality is resolved in the same manner as transactional relatedness. Building on those similarities identified above, the factual question common to the allegations of Smith, Shumaker and Chambers is whether the County engaged in a pattern or practice of retaliation against nurses who raise issues of patient safety and gender preference. If it did, the common legal question raised is whether this pattern or practice violates Title VII or any of the other laws asserted.

Oliva's claims do not raise these same factual and legal questions because, as already explained, they arise from a unique factual scenario. In turn, Oliva raises unique factual issues, particularly with regard to her job performance and the circumstances surrounding the "towel" incident. Even Oliva's "common" claim - the one for racial discrimination - is in all actuality uncommon, if not contradictory, to that of two other plaintiffs.[2] The fact that she asserts causes of action under the same laws as Smith, Shumaker and Chambers is not enough to transform her allegations into common ones for the purpose of Rule 20(a). Nor does severance cause prejudice to Oliva in the manner argued by Plaintiffs. Since her claims are based on one incident and one ultimate form of discipline, they will stand or fall on those facts. A pattern or practice of discrimination on the part of Defendants is not critical to her case.

Because her claims are neither transactionally related nor common to those of the other

---

[2] Oliva has asserted racial discrimination because she is Filipino. Smith and Chambers have in essence asserted the opposite claim; that the County provides preferential treatment for nurses who are Filipino-American. It almost goes without saying that claims such as these are better suited to separate lawsuits.

8
CASE NO. 5:11-cv-05643 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO SEVER

Plaintiffs, Oliva will be severed from this action. Shumaker, however, will not be severed. Although Defendants argue that delay, jury confusion and prejudice will result if Shumaker remains in the same case as Smith and Chambers, the court disagrees. As to delay, Defendants have not identified how Shumaker's continuing presence will change anything about this action's progress, considering this case was filed in 2011 and the parties have already completed a fair amount of discovery. Furthermore, the commonality between the claims of the three remaining defendants renders minimal any potential for jury confusion or prejudice. Accordingly, the liberal policy which governs permissive joinder is not outweighed by Defendants' articulation of unfairness, which the court finds unpersuasive in any event.

### IV. ORDER

Based on the foregoing, Defendant's Motion to Sever is GRANTED IN PART AND DENIED IN PART as follows:

The Motion is GRANTED as to Plaintiff Aida Oliva. The Clerk is directed to: (1) sever Oliva's claims into a distinct action by opening a new case with a new case number, (2) administratively relate the new case to the instant action, and (3) assign the new case to the undersigned.

The Motion is DENIED as to Plaintiff Laurey Shumaker.

The hearing scheduled for June 28, 2013, is VACATED.

**IT IS SO ORDERED.**

Dated: June 25, 2013

EDWARD J. DAVILA
United States District Judge